IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

| | | |
|---|---|---|
| MARTHA OWEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No.: 3:19-cv-225 |
| v. | ) | |
| | ) | |
| RUTHERFORD SUPPLY CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## **COMPLAINT**

Plaintiff, Martha Owen ("Ms. Owen" or "Plaintiff"), by counsel, respectfully states the

following for her Complaint against the defendant Rutherford Supply Corporation

("Rutherford" or "Defendant"):

## **INTRODUCTION**

1.      Ms. Owen, a former Sales Representative for Rutherford, brings causes of action

under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), against

Rutherford, arising from gender discrimination and the sexually hostile work environment

created by the continuous and extreme sexual harassment of Ms. Owen by Rutherford

executives, particularly its Warehouse Manager Terry Woolridge ("Woolridge"), and

Rutherford's retaliation against Ms. Owen for her complaint about Woolridge's sexual

harassment. The retaliation included, among other things, efforts by Woolridge to sabotage

Ms. Owen's success in her position she had held since 2006, when she came on board as a

single mother and grew her sales exponentially since, as well as Rutherford's sudden termination of her employment without cause after her complaints were made. Additionally, Ms. Owen brings her cause of action against Defendant for the assaults and batteries she suffered at the hands of one of Defendant's executives.

## PARTIES

2.      Plaintiff Ms. Owen is 59 years old and a natural person who is a citizen of the Commonwealth of Virginia, and she resides in Richmond, Virginia.

3.      Defendant Rutherford is a Virginia corporation with its principal office located at 1101 E. Laburnum Avenue, Henrico County, Virginia 23222.

4.      At all relevant times, Ms. Owen was an "employee" of Rutherford as defined by 42 U.S.C. § 2000e(f).

5.      At all relevant times, Rutherford was an "employer" as defined by 42 U.S.C. § 2000e(b).

6.      At all relevant times, Woolridge was an "employee" of Rutherford as defined by 42 U.S.C. § 2000e(f), and Woolridge was employed by Rutherford as one of its executives.

## JURISDICTION AND VENUE

7.      On or about February 7, 2019, Ms. Owen timely filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") and pursuant to the EEOC's work sharing agreement with the Virginia Division of Human Rights (EEOC Charge No.: 846-2019-06961) ("Charge of Discrimination"). A copy of the Charge of Discrimination is attached hereto as Exhibit 1 and incorporated by reference herein.

8.      Ms. Owen's Charge of Discrimination included discrimination based upon sex, sexual harassment (hostile work environment) and retaliation, to include wrongful termination.

9.      On or about February 28, 2019, the EEOC issued a Dismissal and Notice of Suit Rights ("Notice") with regard to Ms. Owen's Charge of Discrimination. See Exhibit 2, attached hereto and incorporated herein.

10.     Ms. Owen timely files this action less than ninety (90) days after her receipt of the Notice from the EEOC.

11.     This Court has subject matter jurisdiction over this action pursuant to Title VII.

12.     This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the subject causes of action arise under Title VII, a law of the United States.

13.     Venue for this action properly lies in this Court pursuant to 28 U.S.C. § 1391(b), as the principal office of Defendant is located in the County of Henrico, Virginia which is among the territories assigned to the Richmond Division of the Eastern District of Virginia. *See* Local Rule 3 of the U.S. District Court Rules (E.D. VA).

## **FACTUAL BACKGROUND**

**A.  Rutherford's non-existent and/or inadequate HR structure, policies and procedures concerning sexual harassment.**

14.     Upon information and belief, until recently, Rutherford's Human Resources executive was Woolridge's fiancé and, now, wife, Dawn Sullivan. Recently, Rutherford hired an

"assistant" human resources individual, who reports directly to Dawn Sullivan, now the wife of Woolridge.

15.     Upon information and belief, Rutherford did not have any informal or formal and/or effective policies, procedures or training programs for addressing sexual harassment in the workplace at any relevant time.

16.     Upon information and belief, Rutherford offers no sexual harassment training to any of its employees or executives.

**B.  Rutherford's culture of tolerating the sexual harassment of female Sales and Account Representatives and other women employees in the workplace.**

17.     Rutherford employed Woolridge as its Warehouse Manager the entire tenure of Ms. Owen's employment at Rutherford.

18.     As the Warehouse Manager, Woolridge holds a key executive position at Rutherford, a distribution company. As the Warehouse Manager, he has the ability to "make or break" a Sales Representative and to determine who will succeed. That is, he controls the processes for satisfying, troubleshooting and ensuring completeness and accuracy of the orders of the customers managed by its Sales Representatives, such as Ms. Owen.

19.     At all times relevant, Woolridge has been involved with or engaged to or married to Defendant's executive, Dawn Sullivan, who performed all Human Resources duties for the Defendant until she hired an assistant, after which she performed as well as supervised such HR duties.

20.     Woolridge routinely and repeatedly made unwanted sexual advances toward Rutherford's female employees and made comments that were sexually explicit, degrading and humiliating.

21.     For example, Woolridge made it a common practice at work to approach female employees from behind and smell and play with their hair.

22.     Woolridge often approached female employees from behind and rubbed their shoulders and necks without their consent and during work hours.

23.     Woolridge would often put his hands up under the blouses of female employees at work, "pop" their bra straps and then rub their backs.

24.     During these same times, Woolridge would routinely comment on the bodies of the female employees and their body parts, to include talking about their legs and feet and suggesting what "shoes would look good on them."

25.     Woolridge routinely touched body parts of female employees, all without their consent, commenting on how they looked.

26.     On at least one occasion, Woolridge told a female employee that he was having lewd thoughts about her, for which, if it were "still the 60s," he'd "be lynched" and, on several occasions, Woolridge referred to a female employee as a "MILF."

27.     On multiple occasions, during and after business hours, Woolridge sent photos of lingerie and high heels from his Rutherford-provided phone to a female employee's Rutherford-provided phone, telling her which lingerie and high heels "she would look good in."

28.     During business hours and at Rutherford's place of business, Woolridge asked a female employee questions about her genitalia.

29.     Upon information and belief, most of these incidents took place in a busy and open business environment under surveillance.

30.     In the presence of female employees, Paul Rutherford, the Chief Executive Officer of Defendant, commented on female genitalia and acted out sexual acts.

**C. The sexual harassment suffered by Plaintiff at the hands of Rutherford's executive Woolridge and other executives, creating the sexually hostile and offensive environment, her complaints to her supervisors and the CEO, and the subsequent retaliation and discrimination by her supervisors and the CEO.**

31.     Ms. Owen began working for Defendant in 2006.

32.     At all relevant times, Woolridge would often make offensive comments of a sexual nature to Ms. Owen, look Ms. Owen up and down in a sexually suggestive manner as she tried to work, and approach Ms. Owen and, without consent, begin rubbing her back and shoulders and smelling and playing with her hair, as well as commenting on her legs, feet and shoes and asking if her husband "did *it* this way " or was "as good as " he was.

33.     All this was unwanted and unwelcome touching.

34.     In the fall of 2017, while Ms. Owen was standing in line in the conference room, waiting for a flu shot, Woolridge grabbed the skin around her waist and fondled her.

35.     Although Woolridge's behavior was unwelcomed and offensive to Ms. Owen, she was initially reluctant to do anything to jeopardize her employment, particularly in such a male-dominated environment. She also was extremely concerned about having to rebuff or report Woolridge's advances, particularly to Human Resources, which was under the direction of Woolridge's girlfriend (later wife), Dawn Sullivan. Regardless and with the awareness that

Woolridge could retaliate by causing her difficulties with her customers' orders, in September, 2017, Ms. Owen complained about Woolridge's acts to her supervisor, Kevin Hare, whom, she believes, notified Woolridge of Plaintiff's complaints that day.

36.     Immediately, Woolridge began retaliating against Ms. Owen by ignoring her, refusing to work with her or assist her, not responding to her texts for support, refusing to respond to her emails seeking help to resolve her customers' problems regarding ordering and receiving product and refusing to talk at all with her or even acknowledge her, among other things.

37.     As a result, her inability to respond to her customers' needs to timely procure and receive the correct products and quantity of products began adversely impacting her customers and her sales results, although, to the best of her knowledge, at all times, due to her hard work and extra efforts, she remained in the top half to top third of Rutherford's sales results in the Richmond area, worked by about 16 male Sales Representatives and 3 female Sales Representatives, even with her sales quota being raised in January 2018.

38.     This retaliation by Woolridge exacerbated the overall hostile and offensive work environment Plaintiff endured at Rutherford, so much so that Ms. Owen expressed fears and concerns that having raised these complaints about the sexual harassment she and the other women were experiencing might result in her termination from Rutherford, particularly given Rutherford's culture that included having strippers and naked women present at the company's golf outings.

39.     Having received no relief from Woolridge's retaliation, in the spring of 2018, Ms. Owen approached Rusty Turner, another Rutherford executive, and informed him of

Woolridge's sexual harassment of her as well as his retaliation for her complaining to Kevin Hare, her immediate supervisor. Ms. Owen was seeking Mr. Turner's help in ending the retaliation she was suffering and expressed to him that she now feared Rutherford's CEO might terminate her employment.

40.     Raising her complaint of retaliation to Mr. Turner was her only recourse at this time as it was common knowledge at Rutherford that such a complaint could not be made to Human Resources, because the executive handling HR matters was betrothed to Woolridge and all reasonably believed her to be well aware of his sexual antics in the workplace, which appeared to be acceptable conduct of an executive at Rutherford.

41.     To Ms. Owen's knowledge and belief, Mr. Turner took no action to address her serious concerns and complaints as Mr. Woolridge continued retaliating against her, which included Woolridge's continuous disregard for assisting with Ms. Owen's customer orders as well as, whenever no one else was present, Woolridge's coming up from behind her and making loud sexually suggestive "grunting" noises.

42.     In the fall of 2018, at a regularly-scheduled quarterly meeting of her, Kevin Hare – her supervisor, Rusty Turner and Paul Rutherford - CEO, Ms. Owen raised her complaints of sexual harassment and retaliation a third time. Mr. Rutherford appeared to have not been aware of her previous complaints but seemed dismissive and said, "We love you here, Martha," and attempted to hug her.

43.     A few weeks later, Ms. Owen was terminated without cause and without any explanation and replaced the following day by a male, believed to be under the age of 40.

**D.      A summary of Plaintiff's damages and the basis for Rutherford's liability.**

44.      Woolridge's sexual acts and advances, his unwelcome physical touchings of Ms. Owen's body in a sexual manner and his offensive and degrading comments and actions toward Ms. Owen along with his subsequent retaliation caused Ms. Owen extreme stress, insult and humiliation, making her feel bullied, devalued, manipulated, sabotaged and inferior to the male employees of Rutherford.

45.      Woolridge committed the acts described herein within the ordinary course of his employment as an executive of Rutherford and within the scope of his authority as the Warehouse Manager to, among other things, work with Ms. Owen to increase her sales and satisfy the needs of the company's customers and to guide and educate Ms. Owen in a way to make her and all Sales Representatives more successful. However, after he learned of Ms. Owen's complaint against him, he stopped working with her, helping her and communicating with her; instead, he worked to sabotage her and her customer relationships. As such, Rutherford is vicariously liable for Woolridge's conduct under the doctrine of *respondeat superior.*

46.      The actions and conduct of Rutherford and Woolridge set forth herein were intentional, reckless, willful, wanton and vindictive, and they were outrageous and intolerable by any reasonable person such that Ms. Owen is entitled to an award of punitive damages.

## CAUSES OF ACTION

## COUNT I

## SEXUALLY HOSTILE WORK ENVIRONMENT CLAIM
## (42 U.S.C. § 2000e-2(a)(1))

47.        Plaintiff incorporates by reference and re-alleges each allegation set forth above.

48.        Woolridge subjected Ms. Owen, a woman, to unwelcome, continuous and extreme sexual harassment, including but not limited to, Woolridge's unwelcome sexual advances and his physical touching of her body in a sexual manner as well as his offensive, degrading and crude sexual noises directed at her and his comments made about her and directed toward her.

49.        Woolridge's conduct, including his retaliation, was sufficiently severe or pervasive to alter the conditions of Ms. Owen's employment and create a sexually abusive and/or hostile work environment.

50.        Ms. Owen perceived the working environment at Rutherford to be offensive, abusive, sexually hostile and retaliatory.

51.        A reasonable person in Ms. Owen's circumstances would consider the working environment at Rutherford to be offensive, abusive and/or sexually hostile.

52.        Rutherford had actual or constructive knowledge of Woolridge's conduct and did not take reasonable and necessary steps to promptly and/or appropriately correct or rectify his behavior and/or promptly remove Woolridge as an executive officer/manager.

53.     Woolridge and Rutherford acted with actual malice toward Ms. Owen and/or acted under circumstances amounting to a reckless, willful and wanton disregard of Ms. Owen's federally protected rights.

54.     Directly due to the acts and/or omissions of Rutherford and Woolridge, Ms. Owen has suffered physical, mental and/or emotional distress, and her suffering and damages include, but are not limited to, any future medical expenses to be incurred, anxiety, shame, humiliation, embarrassment, loss of enjoyment of life, helplessness, hopelessness, inconvenience, economic losses and stress, for which damages Rutherford is directly and/or vicariously liable.

## COUNT II

### RETALIATION CLAIMS
### (42 U.S.C. § 2000e-3(a))

55.     Plaintiff incorporates by reference and re-alleges each allegation set forth above.

56.     On three occasions – in September 2017, May of 2018 and October of 2018 – Ms. Owen engaged in protected activity by reporting to Rutherford – to her supervisor, to executive Rusty Turner and to the CEO – the sexual harassment and misconduct by Woolridge, as alleged more particularly above.

57.     Plaintiff is unaware that Rutherford ever conducted any investigations of any of her complaints/reports (but, if so, they were untimely and inadequate and never reported to her); however, it is clear that Woolridge at least was told about her claims in September, 2017, as he immediately began retaliating against her by ceasing to cooperate with her or assisting

her as was his job but, instead, refused to assist her or communicate with her and attempted to sabotage her book of business, so she would fail.

58.     Her ultimate wrongful discharge, notwithstanding her sales continuing to be in the top half of all Sales Representatives – a tribute to her hard work in the face of Rutherford-imposed obstacles -  was punitive and unlawfully retaliatory in response to her bringing Woolridge's conduct to the attention of the Rutherford executive team and was in violation of her participation in activities that are protected from retaliation under Title VII, particularly as she was immediately replaced by a younger male.

59.     Finally, after Ms. Owen was further retaliated against by Rutherford's wrongful termination of her, soon after her departure, she noted that she was owed $7,000 in commissions for her executed sales, and she has reminded them twice since, but Defendant has refused to pay her the commissions they owe and do not dispute.

60.     As alleged above, Ms. Owen has suffered from injuries and has incurred damages as a result of Rutherford's and Woolridge's retaliatory actions to include ignoring her, sabotaging her ability to carry out her duties, wrongfully terminating her employment and refusing to pay her commissions earned by her and duly owed her by Rutherford – all conduct for which Rutherford is directly and/or vicariously liable.

## COUNT III

### ASSAULT AND BATTERY

61.     Plaintiff incorporates by reference and re-alleges each allegation set forth above.

62.     Woolridge, at least weekly, would approach Ms. Owen in Defendant's workplace, with the design and clear intention of smelling and touching Ms. Owen's hair and caressing her neck and rubbing her back and shoulders, placing her in apprehension of the act of his touching her hair or sniffing her hair or rubbing her back or shoulders, all unwelcome acts, which he always then carried out by actually fondling her in the workplace.

63.     Woolridge's approaching her was consistent – she would see him coming at her with his hands "at the ready" to touch and fondle her - or, alternatively, Woolridge would come up from behind her and first whisper something to her before touching her – all of which placed her in immediate and reasonable apprehension of his touching her body . . . which he then routinely did by rubbing her shoulders and/or her back and neck and hair and fondling her as well as sniffing her neck and hair and always asking if her husband was as good as he was or if he did it "this way."

64.     In September of 2017, Woolridge directly approached Ms. Owen as she stood in a line to get a flu shot, with a menacing look on his face, placing her in great apprehension of her personal safety, and grabbed "a handful of her skin" at her waist, fondling her and causing her pain.

65.     After this September, 2017, fondling incident and after years of Woolridge's constant fondling of her back and shoulders and hair and neck in the workplace, all preceded by her being placed in apprehension of such bodily contact by Woolridge, Ms. Owen made her first of three complaints to her supervisor, Kevin Hare, who, upon information and belief, communicated her complaint to Woolridge himself, who then immediately began to retaliate against her. Ms. Owen could not make her complaint to Human Resources because Human

Resources was either solely handled by Woolridge's girlfriend Dawn Sullivan or, after an

administrative clerk was hired, solely supervised by Woolridge's girlfriend (soon to be wife),

who, upon information and belief, was aware of her husband's conduct in the Rutherford

workplace as were other employees.

66.     Ms. Owen has suffered emotional distress from the intentional and offensive

acts afflicted upon her by Woolridge, who had at all times relevant, the present ability to cause

her harm, which reasonably created in her mind the reasonable apprehension of an imminent

battery, always followed by his actually touching of her, thus constituting assault and battery

in Virginia.

67.     As alleged above, as a result of the intentional acts and/or omissions of

Rutherford and Woolridge, Ms. Owen has suffered physical, mental and/or emotional distress,

and her suffering and damages include, but are not limited to, any future medical expenses to

be incurred, loss of income, anxiety, shame, humiliation, embarrassment, loss of enjoyment of

life, helplessness, hopelessness, inconvenience, economic losses and stress, for which

damages Rutherford is liable under the principles of *respondeat superior*/vicarious liability.


### COUNT IV

### GENDER DISCRIMINATION
### (42 U.S.C. § 2000e-2(a)(1)

68.     Plaintiff incorporates by reference and re-alleges each allegation set forth

above.

69.     Ms. Owen, a female, was fully qualified in all ways to perform all her duties and,

indeed, had fully and successfully discharged and performed all her duties as a sales

representative at Rutherford for many years and had substantially grown her accounts there during her career, up to her wrongful termination.

70.    At all times and in all ways, Ms. Owen was at least in the top half or top third of sales by Rutherford's sales representatives during her time at Rutherford as well as at the time of her wrongful discharge. Also, at the time of her termination, the company-wide sales force consisted of approximately 25 males and 2 females, including her. However, in December of 2018 and all reasonable times before and after, upon reasonable belief, when Rutherford terminated Ms. Owen, it terminated no male sales representatives, whether above her or below her on the sales performance charts, thus constituting disparate treatment of females at Rutherford; that is, Rutherford fired 50% of its female sales representatives at the close of 2018 but fired 0% of its male sales representatives. At the time of the filing of this Complaint, the Rutherford sales force was comprised of approximately 25 males and one female.

71.    Upon information and belief, the day after Ms. Owen was wrongfully terminated as retaliation for making her sexual harassment complaints against Defendant, Rutherford brought in a new, less experienced and less qualified male employee to take her place, thus establishing a sales force of approximately 26 males and, then, one female,  yet another prohibited act of discrimination against her on the basis of her gender for which Rutherford is liable for damages under 42 U.S.C. § 2000e-2(a)(1).

72.    Finally, although, Ms. Owen's sales performance was, upon information and belief, in the top third or top half of Rutherford's sales representatives and although, upon information and belief, all male sales representative received all their commissions for 2018, Defendant has refused to pay Ms. Owen her earned December commission, further

discriminating against her on the basis of her gender for which Defendant is liable for damages.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiff Martha Owen respectfully requests that this Court:

A. Enter judgment in her favor and against Defendant Rutherford Supply Corporation;

B. Declare the acts and practices complained of herein to be unlawful and in violation of Plaintiff's rights secured by Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*;

C. Enjoin Defendant from engaging in such unlawful employment practices and order such other affirmative action as may be appropriate;

D. Award Plaintiff compensatory damages for Defendant's violations of Plaintiff's federal constitutional and civil rights, mental and/or emotional distress, wrongful termination and other retaliatory actions, humiliation and embarrassment, and other damages to be shown in the amounts of ONE MILLION DOLLARS ($1,000,000.00) or such greater amount as may be shown;

E. Award Plaintiff punitive damages against Defendant in the amount of FIVE HUNDRED THOUSAND ($500,000.00) for Defendant's assaults and batteries against Plaintiff over her years of employment at Rutherford Supply Corporation as well as the retaliation inflicted upon her, the intentional infliction of emotional distress caused her and the wrongful termination she suffered at the hands of the Defendant;

F.  Award Plaintiff her reasonable attorneys' fees and costs associated with this

lawsuit;

G.  Award Plaintiff pre- and post-judgment interest on any monetary award;

H.  Award Plaintiff her commissions and any multiples of it available under law to Ms.

Owen for Rutherford's intentional and knowing failure to pay it;

I.  Award Plaintiff all other equitable relief as may be appropriate to effectuate the

purposes of 42 U.S.C. § 2000e-5; and

J.  Award Plaintiff any and all other and further relief the Court deems just and

appropriate, including leave to amend the facts stated herein, add parties and/or

claims, and amend the damages sought as further evidence is obtained through

discovery in this matter.

**PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE**


Respectfully submitted,
**MARTHA OWEN**
Plaintiff


Dated: March 22, 2019                By:_____/s/_____
                                                      Counsel

Joseph J. Traficanti (VSB No. 36993)
CelsiusGC, PLC
1802 Bayberry Court, Suite 301
Richmond, VA 23226
Telephone: (804) 380-5002
E-mail: jtraficanti@celsiusgc.com
    *Counsel for Plaintiff, Martha Owen*