IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

MARTHA OWEN,                         )
                                     )
            Plaintiff,               )
                                     )
v.                                   )        Civil Action No. 3:19cv225–HEH
                                     )
RUTHERFORD SUPPLY CORP.,             )
                                     )
            Defendant.               )

MEMORANDUM OPINION
(Disposition of Post-Trial Motions and Related Matters)

The Plaintiff in this case, Martha Owen, was a long-term employee of Rutherford

Supply Corporation ("Defendant").  She alleges in her Complaint that she was discharged

from her employment after voicing concern about sexual harassment and hostility in the

workplace, culminating in the immediate lawsuit.

Following a three-day trial, a jury returned a verdict for Plaintiff Martha Owen on

three of four counts in her Complaint, awarding her damages of $350,000.00.[1]  Pursuant

to 42 U.S.C. § 1981a(b)(3), compensatory and punitive damages awarded in actions

brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2, 2000e-3

(as amended) ("Title VII") are limited.

---

[1] The jury awarded Plaintiff $125,000 in compensatory damages and $125,000 in punitive
damages on Count One (sexually hostile work environment).  (ECF No. 69.)  It further awarded
Plaintiff $50,000 in compensatory damages and $25,000 in punitive damages on Count Two
(retaliation).  (*Id.*)  On Count Three (assault and battery), the jury awarded Plaintiff $25,000.
(*Id.*)

Because there are statutory limitations on damages in Title VII cases, following the trial in February 2020, this Court directed both sides in this dispute to file post-trial memoranda detailing their respective positions on the applicability of the damages cap in Title VII actions, as well as Plaintiff's eligibility for back pay and front pay.[2]  Both parties have responded thereto (ECF Nos. 74, 78), and the Court heard oral argument on July 7, 2020.  For the reasons detailed herein, the Court will grant Defendant's Motion for Application of the Statutory Damages Cap (ECF No. 73), and will grant Plaintiff's Motion for Attorneys' Fees in part (ECF No. 77).

The evidence revealed that Plaintiff began working for Defendant in 2006, serving as a sales representative.  (Trial Tr. 5:4–5; 6:8–9.)  Plaintiff testified that, beginning on an unascertained date during Plaintiff's employment, Terry Woolridge ("Woolridge"), Defendant's Warehouse Manager, made routine and repeated unwanted sexual advances toward Plaintiff and other female employees.  (Trial Tr. 22:2–23:14; 31:14 – 32:17; 32:21–23; 107:9–108:10; 109:6–110:17; 221:2–22; 246:11–22; 247:7–252:8.)  Plaintiff further testified that she reported these incidents to her supervisors on three occasions.  (Trial Tr. 12:4–7; 23:9–14; 55:9–14; 62:20–63:4.)  Following these reports, Woolridge began ignoring Plaintiff—refusing to work with her or acknowledge her.  (Trial Tr. 36:20–37:8; 253:17–25.)

During this period, Plaintiff's performance at work declined, in part because of Woolridge's refusal to timely process her deliveries to her clients.  (Trial Tr. 272:18–

---

[2] In her filings, Plaintiff additionally requested an award of attorneys' fees and costs.  (ECF Nos. 77, 78, 86.)  Therefore, the Court will also address Plaintiff's request in this Memorandum Opinion.

273:18; 284:16–286:12.) Plaintiff's sales results suffered as she became "disengaged." (Trial Tr. 189:14–190:6; 354:2–23; 355:23–356:22; 363:24–364:15; 399:19–400:9; 417:15–418:5.) Despite this, Plaintiff remained in the top half of Defendant's sales in the Richmond area. (Trial Tr. 24:22–26:9.) On December 11, 2018, Plaintiff was terminated, and this suit followed. (Trial Tr. 80:6–7.) Of Plaintiff's four claims, the jury returned a verdict in her favor on three of them—her claims for sexually hostile work environment, retaliation, and assault and battery.

## I.   The statutory damages cap applies to Plaintiff's Title VII *action*.

Defendant contends that, as a result of the statutory damages cap, the maximum amount that Plaintiff may be awarded on her sexually hostile work environment and retaliation claims is $50,000, and that the jury award must be reduced accordingly. (Def.'s Post-Trial Mem. at 2, ECF No. 74.) As Plaintiff conceded at oral argument that the statutory damages cap applies to her action—not to each of her claims under Title VII individually—this Court will apply the statutory damages cap accordingly.[3]  Under

---

[3] The United States Court of Appeals for the Fourth Circuit has yet to address this issue specifically in a published opinion. In *Hylind v. Xerox Corp.*, the jury returned a verdict in favor of the plaintiff on two claims under Title VII—awarding $1,000,000 in compensatory damages on her sexual discrimination claim, and $500,000 in compensatory damages on her retaliation claim—and the district court reduced the jury's award of compensatory damages on the plaintiff's successful claims to the $300,000 statutory cap. 749 F. Supp. 2d 340, 345 (D. Md. 2010), *rev'd on other grounds*, 481 F. App'x 819 (4th Cir. 2012) (unpublished), *cert. denied*, 568 U.S. 1160 (2013); *see Hylind*, 481 F. App'x at 823 (citing § 1981a(b)(3)(D)). The Fourth Circuit stated that, "[e]ven if other related Title VII claims brought by [Plaintiff] . . . ultimately were successful, such claims also would have been subject to the statutory cap." *Hylind*, 481 F. App'x at 823 (citing *Black v. Pan Am. Labs., L.L.C.*, 646 F.3d 254, 264 (5th Cir. 2011)); *see id.* ("[W]e will not disturb the district court's judgment on this issue."); *see also Ward v. Autozoners*, LLC, 958 F.3d 254, 262 (4th Cir. 2020) (published) (noting with approval the application of the damages limit under § 1981a(b)(3)(D)).

§ 1981a(b)(3)(A), the sum of a plaintiff's compensatory and punitive damages must be capped at $50,000 where the defendant had more than 14 and fewer than 101 employees in each of 20 or more calendar weeks in the current or preceding calendar year. Because there appears to be no dispute that this is the correct classification of Defendant's number of employees, this rule must be applied to Plaintiff's jury award on her claims under Title VII. Therefore, her award on these claims—an amount of $325,000 in the aggregate— must be reduced to $50,000.[4] Accordingly, Defendant's Motion is granted.

## II.   Plaintiff is entitled to back pay in the amount of $133,017.28, which is not subject to the statutory damages cap.

Back pay is explicitly excluded from compensatory damages under § 1981a; thus, if Plaintiff is entitled to back pay, any amount she is awarded will not be subject to the statutory cap. § 1981a(b)(2). To establish that she is entitled back pay, a plaintiff-

---

The Court also notes the abundance of additional, persuasive authority on this issue. *See Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 286 (1998) (emphasis added) (stating in dicta that, with respect to Title IX, "Congress carefully limited the amount recoverable in any individual *case*, calibrating the maximum recovery to the size of the employer"); *Alexander v. Fulton Cty.*, 207 F.3d 1303, 1322 n.13 (11th Cir. 2000) (emphasis added), *overruled on other grounds*, ("[T]he total amount recoverable for each complaining *party* under Title VII for compensatory and punitive damages applied to the lawsuit as a whole), *cert. denied*, 525 U.S. 822 (1998), *abrogated on other grounds*, *Pollard v. E.I. du Pont de Nemours & Co.*, 532 U.S. 843, 847 (2001). Courts in this district have similarly applied the cap. *See Hinton v. Va. Union Univ.*, No. 3:15cv569, 2016 WL 3922053, at *4 (E.D. Va. July 20, 2016); *Hall v. Stormont Trice Corp.*, 976 F. Supp. 383, 386 (E.D. Va. 1997) (holding that the cap applies to the total sum awarded to a plaintiff).

[4] Plaintiff's award on Count Three, her claim for assault and battery, is unaffected by the damages cap. Therefore, in addition to her award on Counts One and Two—which was reduced to $50,000—she will also receive $25,000 as her award on Count Three.

employee must introduce evidence in support of her claim that she was unable to find comparable work. *Edwards v. Sch. Bd. of City of Norton*, 658 F.2d 951, 956 (4th Cir. 1981) ("An improperly dismissed employee may not remain idle and recover lost wages from the date of discharge."). Once she has done so, the burden shifts to the defendant-employer to demonstrate that she did not exert reasonable efforts to mitigate her damages. *Id.* at 956. The duty to mitigate is not without limits, however. *Miller v. AT&T Corp.*, 250 F.3d 820, 838 (4th Cir. 2001) ("[A] plaintiff need not go into another line of work, accept a demotion, or take a demeaning position." (quoting *Ford Motor Co. v. E.E.O.C.*, 458 U.S. 219, 231–32 (1982) (internal quotations omitted))).[5]

Back pay is generally to be awarded to successful Title VII plaintiffs, *see Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 651 (4th Cir. 2002), and a finding of discriminatory discharge is presumptive proof that back pay is owed. *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 420 n.12 (1975). "[G]iven a finding of unlawful discrimination, backpay should be denied only for reasons which, if applied generally, would not frustrate the central statutory purposes of eradicating discrimination throughout the economy and making persons whole for injuries suffered through past discrimination." *Id.* at 421. Where a court declines to award back pay, it must articulate

---

[5] Although some courts have indicated that, after an extended period of time searching for work without success, a plaintiff must consider taking a lower-paying position, this Court does not believe this caveat applies to Plaintiff in this case as the period for which she would receive back pay is only 19 months. *See e.g., N.L.R.B. v. Southern Silk Mills, Inc.*, 242 F.2d 697 (6th Cir. 1957) (emphasis added) ("The failure of these two employees, under the conditions existing in the present case, to seek or take other suitable, available employment, although at a lower rate of pay, over a period of approximately *three* years, constitutes to some extent at least loss of earnings 'willfully incurred.'"), *cert. denied*, 355 U.S. 821 (1957).

its reasons for doing so. *Id.* at 421 n.14; *id.* at 422 ("[T]he mere absence of bad faith" is

"not a sufficient reason for denying back pay.").

Plaintiff seeks close to $100,000 in back pay.[6] (Pl.'s Post-Trial Mem. at 10

("[T]he back pay Ms. Owen should receive in this matter is $94,945.27."), ECF No. 78.)

Defendant contends, however, that Plaintiff's failure to accept jobs for which she was

given offers precludes an award for back pay. (Def.'s Resp. Opp. at 10, ECF No. 84.)  It

appears to this Court that the offers to which Defendant refers involved working on a

farm in Amelia County and taking care of a friend's mom. (Trial Tr. 82:18–83:2.)

Plaintiff not only testified that these positions were part-time, but she also gave this

testimony in response to defense counsel's inquiry about whether she had sought

positions other than sales. (*Id.*)  Because Plaintiff is not required to accept a demotion or

look beyond her field in order to sufficiently mitigate her damages, the Court believes

this testimony is not dispositive.

The remaining evidence at trial, as well as that adduced at the post-trial

evidentiary hearing, supports a finding that Plaintiff made reasonable efforts to mitigate

her damages.  She testified at trial, and at the evidentiary hearing, that she sought and had

difficulty obtaining comparable employment—explaining that she applied to "about 20 or

---

[6] Plaintiff improperly applied the period for back pay in her brief, measuring the period from the date of the unlawful employment action to the date of the jury verdict. However, the correct period for measuring back pay is from the date of the unlawful employment action to the date of entry of judgment. *Patterson v. Am. Tobacco Co.*, 535 F.2d 257, 269 (4th Cir. 1976).  As a result, the Court will apply the correct period in calculating any award of back pay.

21" positions without success.[7] (Trial Tr. 43:12–21; Hearing Tr. 37:6–10; Hearing Tr. 39:15–18; Hearing Tr. 40:16–18.) These jobs spanned the sales industry, from jobs in food services and wine sales to jobs in pharmaceutical sales and solar film sales. (Hearing Tr. 37:11–15.) Plaintiff explained that she searched online for open positions and also spoke with friends in the industry, seeking assistance with her job search. (Hearing Tr. 39:5–8; 41:3–5.) Although she did not use an employment agency to further her search—nor did she contact any of Defendant's competitors, *see* Hearing Tr. 39:1–4—Plaintiff was not required to make a *herculean* effort to mitigate her damages. *See Miller*, 250 F.3d at 838. Rather, Plaintiff had only to use reasonable diligence. *See Ford Motor Co.*, 458 U.S. at 231. Accordingly, based upon the evidence, the Court finds Plaintiff utilized reasonable diligence in mitigating her damages. The Court further finds that an award of back pay is appropriate in this case as back pay is generally awarded to successful Title VII plaintiffs, *see Dennis*, 290 F.3d at 651, and the jury's finding on Plaintiff's retaliation claim counsels in favor of such an award, *see Albemarle Paper Co.*, 422 U.S. at 420 n.12.

The period by which back pay is calculated begins on the date the unlawful employment action occurred and ends on the date judgment is entered. *Patterson v. Am. Tobacco Co.*, 535 F.2d 257, 269 (4th Cir. 1976). Pursuant to 42 U.S.C. § 2000e-5(g), an

---

[7] Furthermore, based upon the bitterness between the parties, the Court surmises that Plaintiff's search could have been made eminently more difficult with a termination on her record and without a recommendation from her former employer. "Defendant cannot now fault Plaintiff for an inability to find comparable work when it was Defendant's discriminatory conduct that prevented Plaintiff from obtaining such work in the first place." *See* Mem. Op. at 3, *Tinsley*, No. 3:16-cv-656–GCM.

award of back pay should be made in an amount equal to the sum of wages and benefits that a plaintiff would have earned absent the discriminatory conduct, less any money that the plaintiff did earn during that time period. In finalizing the award, a court should apply pre-judgment interest pursuant to Virginia law. *See Quesinberry v. Life Ins. Co. of N. Am.*, 987 F.2d 1017, 1031 (4th Cir. 1993) (en banc).

Applying the above formula, Plaintiff is entitled to $133,017.28 in back pay, plus pre-judgment interest. Although Plaintiff's pay was earned solely through commissions, the total amount of wages Plaintiff likely would have earned had she continued to work—based upon her gross pay as reflected in 2018 W-2—would have amounted to $133,017.28.[8] *See Armstrong v. Index Journal Co.*, 647 F.2d 441, 449 (4th Cir. 1981) (awarding a saleswoman plaintiff reasonable compensations for sales commissions as a component of a back pay award); *see also, e.g., White v. Carolina Paperboard Corp.*, 564 F.2d 1073, 1090 (4th Cir. 1977) (stating that, where such figures in an employment matter are missing from the record and cannot be gleaned from testimony, the court may take "the hourly wages of known years and from those make a finding as to the hourly wages of the unknown years if it deems the evidence of sufficient reliability"). In fact, Plaintiff earned $0.00. (Hearing Tr. 38:7–8 (stating she could not find employment).)

---

[8] The Court reached this figure by using the gross pay reflected in Plaintiff's 2018 W-2. (*See* ECF No. 78-4.) Because Plaintiff's gross pay earned in 2018 stems from a year in which she worked 345 days, the Court used this number to determine Plaintiff's average daily income. The Court then multiplied this number by the number of days reflected by the applicable period for back pay—from the date of the unlawful employment action to the date of entry of judgment.

Thus, Plaintiff is entitled to the difference, which is $133,017.28, adjusted to include pre-judgment interest in the amount of six percent, *see* Va. Code § 6.2-302.

In addition to its deterrence value, "an award of back pay is designed 'to make persons whole for injuries suffered on account of unlawful employment discrimination.' Computation of Plaintiff's back pay by measuring it against the pay that she would have, hypothetically, earned but for the unlawful discrimination achieves this equitable purpose." *Armstrong*, 647 F.2d at 446 (internal citation and alterations omitted). Accordingly, insofar as Plaintiff's Motion requests back pay, the Motion is granted in part.

### III.     Plaintiff is entitled to front pay in the amount of $83,280.42, which is not subject to the statutory damages cap.

Front pay is not an element of compensatory damages within the meaning of § 1981a; therefore, if Plaintiff is entitled to front pay, any amount she is awarded will not be subject to the statutory cap. *See Pollard v. E.I. du Pont de Nemours & Co.*, 532 U.S. 843, 854 (2001). Although reinstatement is the preferred remedy, front pay is an available remedy when reinstatement is not appropriate. *Duke v. Uniroyal Inc.*, 928 F.2d 1413, 1424 (4th Cir. 1991) (providing examples of circumstances in which reinstatement is not appropriate). Under such circumstances, the decision to award front pay is within the discretion of the district court. *Id.*

As an initial matter, it appears plain to the Court that—based upon the palpable animosity between the parties—reinstatement is not an appropriate remedy in this case. *See id.* ("The appropriate method for addressing the difficult question of providing a

remedy which anticipates potential future losses requires an analysis of all the circumstances existing at the time of trial for the purpose of tailoring a blend of remedies that is most likely to make the plaintiff whole."); *see also Hunter v. Town of Mocksville*, 897 F.3d 538, 562 (4th Cir. 2018) (finding that the district court did not abuse its discretion in denying a request for reinstatement where there was continued hostility between the parties (citing *Duke*, 928 F.2d at 1423)). Furthermore, although Woolridge is no longer employed by Defendant, *see* Hearing Tr. 18:12–20, many of those who held leadership positions at the time of Plaintiff's termination remain employed by Defendant. *See* Mem. Op. at 8, *Tinsley v. City of Charlotte*, No. 3:16-cv-656–GCM (W.D.N.C. Apr. 26, 2019), ECF No. 95 (finding reinstatement impractical where leadership remained largely the same as it had been when plaintiff was discharged). Thus, the Court denies reinstatement and is confronted with whether and how much front pay to award Plaintiff.[9]

"[T]here is no bright line test for awarding front pay." *Hunter*, 897 F.3d at 562 (citations omitted). In determining whether to award front pay, the court may consider that the determination is inherently speculative, as well as the plaintiff's age, education and experience, and diligence in attempting to secure replacement employment. *Dotson v. Pfizer, Inc.*, 558 F.3d 284, 300 (4th Cir. 2009); *Loveless v. John's Ford, Inc.*, 232 F. App'x 229, 238 (4th Cir. 2007) (unpublished); *see Wootten v. Virginia*, No. 6:14-CV-00013, 2016 WL 7496145, at *4 (W.D. Va. Dec. 30, 2016) (collecting cases) (considering the length of plaintiff's employment prior to termination, how long plaintiff

---

[9] The Court finds it further persuasive that, although Defendant claims Plaintiff may return to work, there is no evidence of any formal offer of reinstatement.

intended to work, plaintiff's prospects of comparable employment, plaintiff's status as an

at-will employee, the time period of the award, and how long other employees have

stayed in comparable positions).

Plaintiff is sixty years old and was fifty-nine years old at the time that Defendant

terminated her employment. (Trial Tr. at 80:6–7; 43:18–21.) As Plaintiff's age places

her closer to retirement than many other plaintiffs to whom courts have denied front pay,

*see e.g., Dotson*, 558 F.3d at 300 (affirming a denial of front pay based on plaintiff's

"relatively young age when terminated"), this factor weighs in favor of a front pay award.

*See Duke*, 928 F.2d at 1423 ("[W]hen the period for reinstatement was expected to be a

relatively short one, such as if the plaintiff was close to retirement, the strong preference

in favor of reinstatement has been found to be neutralized by the increased certainty of

the potential loss of pay, permitting consideration of a front pay award."). Additionally,

Defendant employed Plaintiff for twelve years prior to her termination, and thus the

length of time Plaintiff worked for Defendant weighs in favor of a front pay award.

(Trial Tr. at 5:4–5; 80:6–7.)

Furthermore, the record also supports the proposition that Plaintiff intended to

continue to work for Defendant but for the discrimination. (Trial Tr. at 38:1–3; 65:16–18

(claiming she would have otherwise continued to work until she was seventy years old).)

She further testified, as mentioned *supra*, that she had difficulty obtaining comparable

employment—explaining that she applied to "about twenty or twenty-one" positions

without success. (Trial Tr. at 43:12–21.) It is also clear to this Court, however, that

Plaintiff maintains the ability to work, particularly given her testimony that she intended

to remain employed by Defendant and that she performed well during her employment. (Trial Tr. at 24:19–26:9; 38:1–3; 65:16–18.)  Nevertheless, this factor weighs in favor of tempering an award of front pay, not denying it.  Therefore, based upon the evidence, this Court finds that the only practical way to remedy the harm Plaintiff suffered is with an award of front pay.

Front pay awards must be tempered due to their speculative nature. *Duke*, 928 F.2d at 1424.  In this case, Plaintiff seeks an award of five years of front pay in the amount of $406,908.30; however, the Court believes a lesser amount will adequately serve the intended purpose of front pay. *See Hunter*, 897 F.3d at 562 ("The purpose of awarding front pay is to provide resources to a wrongfully terminated plaintiff 'to complement a deferred order of reinstatement or to bridge a time when the court concludes the plaintiff is reasonably likely to obtain other employment.'" (quoting *Duke*, 928 F.2d at 1424)).  Despite the fact that Plaintiff will likely be returning to the workforce during the midst of a global pandemic, this Court believes that she is eminently employable based upon her performance while employed by Defendant, as well as the statement of Jeff Miller, the managing partner and co-founder of Sales Recruiters of Virginia, LLC, that he "could place her in a comparable sales representative position within a week."[10] (*See* Miller Aff., ECF No. 84-2.)

---

[10] The Court's references to Plaintiff's performance while employed by Defendant do not refer to her performance relative to Defendant's other salespeople but rather to Plaintiff's ability to work and her personal successes in doing so.

Therefore, an award of one year of front pay—in the amount of $83,280.42[11]—

should be sufficient to compensate Plaintiff until such time as she is able to secure

employment. Accordingly, the Court finds that an award of one year of front pay is

appropriate in this case. *See Hunter*, 897 F.3d at 561 (stating that the decision to award

or deny equitable relief, such as reinstatement or an award of front pay, is a discretionary

decision for the district court); *see also id.* at 562 (concluding that the district court did

not abuse its discretion when it granted plaintiff 1.75 years of front pay). Thus, insofar as

Plaintiff's Motion requests front pay, the Motion is granted in part.

**IV.   Plaintiff is entitled to attorneys' fees in the amount of $475,000.00.**

Finally, Plaintiff requests $600,00.00 in attorneys' fees and $9,199.07 in costs. An

award of attorneys' fees under Title VII is discretionary, but "a prevailing plaintiff

ordinarily is to be awarded attorney's fees in all but special circumstances."

*Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 417 (1978) (emphasis omitted);

*EEOC v. Greenbriar Pontiac-Oldsmobile-GMC Trucks-KIA*, 314 F. Supp. 2d 581, 585–

86 (E.D. Va. 2004). "In determining reasonable attorneys' fees, courts must first

calculate the lodestar amount," *Coles v. Land's Towing & Recovery, Inc.*, 3:10-cv-25,

---

[11] The Court reached this figure by using the gross pay reflected in Plaintiff's 2018 W-2. (*See* ECF No. 78-4.) Because Plaintiff's gross pay earned in 2018 stems from a year in which she worked just shy of 365 days—345 days—the Court enlarged this number by 5.5% to represent the gross pay she would have earned if she had worked the full year. As the Court finds that an award of one year of front pay is appropriate in this case, the Court then used her estimated full year gross pay as the appropriate figure. Furthermore, the Court finds that determining the present value of the stream of income due to Plaintiff over the next year would not alter this figure. *See Xiao-Yue Gu v. Huges STX Corp.*, 127 F. Supp. 2d 751, 763 (D. Md. 2001) ("Given the relatively short duration of its award, the Court believes that presupposing salary increases over the next four years only to discount the award to account for the time value of money presents a rather redundant venture.").

2010 WL 5300892, at *2 (E.D. Va. Dec. 22, 2010) (citing *Grissom v. Mills Corp.*, 549

F.3d 313, 320 (4th Cir. 2008)), which is "the product of reasonable hours times a

reasonable rate," *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S.

546, 565 (1986). This number must represent the product of "billing judgment." *Hensley*

*v. Eckerhart*, 461 U.S. 424, 437 (1983). The Fourth Circuit has adopted the factors set

forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), for

determining the reasonableness of attorneys' fees, and these factors permit an adjustment

of the lodestar amount where appropriate.[12]  *See Barber v. Kimbrell's, Inc.*, 577 F.2d 216,

226 n.28 (4th Cir. 1978).

Plaintiff's attorneys, Joseph Traficanti and Thomas Bowden, have offered three

affidavits to support both the reasonableness of the hours expended in this case as well as

the reasonableness of their fees. They aver that the lodestar calculation for attorneys'

fees, based upon rates of $500.00 and $350.00 per hour, amounts to an award of

$600,000.00—following a roughly 7 percent reduction from $648,500.00. (Pl.'s Post-

Trial Mem. at 5–6.)  In addition to the affidavits of Plaintiff's attorneys, *see* ECF Nos.

86-2, 86-3, Plaintiff also offers an affidavit from Harris D. Butler, III—which provides

---

[12] The Fourth Circuit has characterized the twelve *Johnson* factors as follows: (1) The time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorneys' opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorneys' expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases. *See McAfee v. Boczar*, 738 F.3d 81, 88 n.5 (4th Cir. 2013).

Mr. Traficanti's experience in labor and employment matters, as well as attests to Mr.

Bowden's experience in employment matters. (Butler Aff., ECF No. 86-1.) Mr. Butler

has reviewed Plaintiff's attorneys' work in this case and avers that an hourly rate of

$500.00 is at or below the prevailing hourly rates for employment attorneys of Mr.

Traficanti's experience and expertise in Richmond, and that the same is true of an hourly

rate of $350.00 for Mr. Bowden. (*Id.* at 5 ("My younger partners, with less seniority at

the bar, bill at rates of $425.00, $375.00, and $315.00" (internal alterations omitted)).)

Although Plaintiff has carried its burden of production on this issue, *see Robinson v.

Equifax Info. Servs., LLC*, 560 F.3d 235, 245 (4th Cir. 2009) ("[A]ffidavits of other local

lawyers who are familiar both with the skills of the fee applicants and more generally

with the type of work in the relevant community are sufficient to satisfy the requirement

that 'specific evidence' support a proposed hourly rate."), these affidavits are not the sum

total of the evidence before this Court.

Defendant also submitted an affidavit from Mrs. Colleen Quinn. (Quinn Aff.,

ECF No. 90-1.) Mrs. Quinn alleges that "[t]he fees exceed what would be customary."

(*Id.* at 4.) While she does not detail other local hourly rates—although she does state

that, after 31 years of practice that includes matters in employment law, her hourly rate is

$425.00—Mrs. Quinn contrasts the sum requested in this case with those requested in

other similar matters. (*Id.* at 2, 5–6.) Despite the fact that the cases she cites did not

proceed to trial, each of the matters involved at least two rounds of motions to dismiss,

and the fees requested pale in comparison to Plaintiff's request of $600,000.00 in this

case. (*Id.* at 5–6 (amounting to $12,215.91, $22,732.75, and $116,825.00).)

Furthermore, attorneys' fees in similar cases further support Mrs. Quinn's assertion that

Plaintiff's request is excessive. *See Tinsley v. City of Charlotte*, 397 F. Supp. 803, 812

(W.D.N.C. 2019) (granting a total award of attorneys' fees in the amount of

$330,797.50); *Burke v. Mattis*, 315 F. Supp. 3d 907, 915 (E.D. Va. 2018) (reducing

attorneys' fees and awarding a total of $335,034.22). Thus, even though the parties'

affidavits appear to neutralize the other's value, in conjunction, these factors—the

customary fee for like work and the attorneys' fees in similar cases—tend to favor a

finding that the requested fees are unreasonable.

Furthermore, the amount in controversy and the results obtained present more

doubt regarding the reasonableness of the fees. Plaintiff's counsel achieved a verdict in

Plaintiff's favor on three of four counts, in the amount of $350,000.00, which should

demonstrate a degree of reasonableness, *see Hensley*, 461 U.S. at 435 ("Where a plaintiff

has obtained excellent results, his attorney should recover a fully compensatory fee.").

However, Plaintiff's requested amount of attorneys' fees is almost twice the jury award—

not to mention, the jury award is subject to the statutory cap under § 1981a, *see supra*.

Therefore, this factor further suggests the fee request is unreasonable. Accordingly,

based upon the foregoing, the Court finds a reduction of Plaintiff's fee request is

appropriate.

In addition to determining whether the fee request was reasonable, the Court must

also determine whether an adjustment to the lodestar amount is necessary based upon the

reasonableness of the hours. In attempting to assess the time and labor expended by

Plaintiff's attorneys in this matter, the Court finds its review frustrated by Plaintiff's

attorneys' practice of block billing, as well as by their vague time entries. "Block

billing" is a form of inadequate documentation of timekeeping, including "the practice of

grouping, or 'lumping,' several tasks together under a single entry, without specifying the

amount of time spent on each particular task." *See Guidry v. Clare*, 442 F. Supp. 2d 282,

294 (E.D. Va. 2006) (collecting cases). As this practice is disfavored in federal courts

across the country, *see McAfee v. Boczar*, 906 F. Supp. 2d 484, 498 (E.D. Va. 2012)

(collecting cases), *vacated and remanded on other grounds*, 738 F.3d 81 (4th Cir. 2013),

such improper recordkeeping has justified a reduction in courts' awards of attorneys'

fees. *See id.* at 500 ("The traditional remedy for block billing is to apply a reasonable

across the board fixed percentage reduction on amounts based on the trial court's

familiarity with the case, its complexity and the counsel involved." (citing *Project

Vote/Voting for America, Inc. v. Long*, 887 F. Supp. 2d 704, 716 (E.D. Va. 2012)));

*Guidry*, 442 F. Supp. 2d at 294.

Plaintiff's attorneys submitted only a single, unsworn report, purporting to reflect

their itemized billing. (ECF No. 78-2.) The report alleges that Plaintiff's primary

attorney—Mr. Traficanti—worked in excess of 1,188 hours, at a rate of $500.00 per hour,

over the course of 14 months to investigate and litigate Plaintiff's claims. (ECF No. 78-

2; *see also* Pl.'s Post-Trial Mem. at 5–6.) This report further reflects that Thomas

Bowden worked for 155 hours on the case, at a rate of $350.00 per hour. (ECF No. 78-2;

*see also* Pl.'s Post-Trial Mem. at 5–6.) In addition, many of the billable hours in the

report are noted in large increments with little detail as to the specific tasks accomplished

during those hours. (*See* ECF No. 78-2 (including "strategize with partners" for 6.5

hours, "prepare for pretrial conference" for 3 hours, and "finalize replies and file" for 9.5

hours).)  Some notable instances of this block billing include an entry from January 11,

2019, logging 13 hours under the heading "prepare affidavits, continue research," as well

as an entry spanning two days—August 27 to August 28, 2019—in which Mr. Traficanti

logged 16.5 hours at once, labeling the entry "cont'd research and work re mediation

memo." (ECF No. 78-2.)

In addition to being unsworn, this report also contains vague time entry

descriptions—in addition to those entries listed above—such as "[b]egin detailing trial

strategy," for which counsel claim credit for 6 hours of billable time.  (ECF No. 78-2.)

Additionally, the Court finds particularly perplexing counsel's entry entitled

"[f]amiliarize self with ECF/visit clerk's office," for which counsel logged 3 billable

hours. (ECF No. 78-2.) *See Scott*, 2020 WL 2771949, at *7 ("Vague time entries are a

bigger impediment to the Court's assessment of the reasonableness of Plaintiffs' fee

request than block billing."); *Coward v. Robinson*, No. 1:10-cv-147 (LMB/MSN), 2017

WL 5195868, at *5 (E.D. Va. Nov. 9, 2017) (finding entries too vague—such that they

frustrated the court's review of reasonableness—where the description given provided

only "prepare for" or "attend" proceedings).  Although this Court does not doubt that a

significant amount of work was required of Plaintiff's attorneys in this matter, the

combination of block billing and vague time entries undermines this Court's ability to

determine the reasonableness of the hours and labor expended.  Weighing the lack of

specificity and delineation, the Court will exercise its discretion to reduce the total

billable hours of counsel. *See Coward*, 2017 WL 5195868, at *6 (citing *Abusamhadaneh*

*v. Taylor*, No. 1:11cv939 (JCC/TCB), 2013 WL 193778, at *21 (E.D. Va. Jan. 17, 2013)).

Furthermore, at the post-trial evidentiary hearing, Plaintiff's counsel explained that he could not provide more specific billing entries as his firm does not have any assistants on staff, which requires him to undertake clerical tasks himself. (Hearing Tr. 25:5–7.) Because the Court cannot adequately distinguish between the time spent on clerical tasks and that spent on substantive matters, a further reduction of Plaintiff's billable hours is appropriate. *See Larsen v. AR Resources, Inc.*, _ F. Supp. 3d _, 2020 WL 1816203, at *3 (E.D. Va. Apr. 10, 2020) (Smith, J.) (reducing the hours awarded for time entries involving work that could be considered secretarial rather than legal (citing *Denton v. PennyMac Loan Servs., LLC*, 252 F. Supp. 3d 504, 525–26 (E.D. Va. 2017) (collecting cases))).

Finally, this case did not involve particularly novel or difficult legal issues. Rather, Plaintiff's claims—sexually hostile work environment, retaliation, and gender discrimination—are oft-litigated and prototypical of employment matters. Similarly, as the matter did not require Plaintiff's counsel to simplify and communicate complex legal arguments and factual circumstances to the Court and the jury, the skill required to properly perform the legal services rendered did not exceed that necessary to litigate a traditional case of the same nature.[13]

---

[13] The Court will not discuss the other *Johnson* factors. However, the Court notes that the other factors were considered by the Court and found to be either irrelevant to the matter directly before the Court or neutral in determining what amount to award in this case.

Thus, applying the *Johnson* factors, this Court believes the award Plaintiff seeks is

unreasonable based on the record at hand, and the lodestar amount must be reduced to

some degree—principally because Plaintiff's attorneys engaged in "block billing" and

many of their time entries are vague, which significantly undermines this Court's review

of the reasonableness of the award. *See Rum Creek Coal Sales, Inc. v. Caperton*, 31 F.3d

169, 180 (4th Cir. 1994) ("exhort[ing] counsel to describe specifically the tasks

performed"); *Scott v. Clarke*, No. 3:12-cv-00036, 2020 WL 2771949, at *6 (W.D. Va.

May 28, 2020) (citing *Harwood v. Am. Airlines, Inc.*, No. 1:17-cv-484, 2019 WL

3244200, at *4 (E.D. Va. May 16, 2019)). "Vague billing and excessive billing . . . each

may warrant different reductions in fees requested." *Scott*, 2020 WL 2771949, at

*5 (citing *Project Vote/Voting for America, Inc. v. Long*, 887 F. Supp. 2d at 715–17).

The Court acknowledges that Plaintiff's counsel has already proposed a figure—

$600,000—for attorneys' fees that incorporates a 7 percent reduction. (Pl.'s Post-Trial

Mem. at 8–9.) Nevertheless, the Court feels it necessary to impose a further 20 percent

reduction on Plaintiff's award of attorneys' fees. This finding is based upon a cumulative

review of the *Johnson* factors, including both the vagueness of the time entries in the

attached report, and the fact that counsel appeared to "block bill" many of the entries,

which significantly frustrated this Court's review of the reasonableness of the hours

worked. *See Scott*, 2020 WL 2771949, at *7 (imposing a combined reduction of 20

percent and explaining that courts often impose 20 percent reductions for vague time

entries and between 10 and 20 percent reductions for block billing (citing *Route Triple

Seven Ltd. P'ship v. Total Hockey, Inc.*, 127 F. Supp. 3d 607, 621–22 & n.14 & 15 (E.D.

20

Va. 2015))). Accordingly, having reviewed the materials submitted, as well as fee

awards in other Title VII cases, the Court finds that a combined 27 percent reduction is

appropriate, and Plaintiff's attorneys are entitled to an award of attorneys' fees in the

amount of $475,000.00.[14]

Finally, Mr. Traficanti asserts that his law firm has advanced costs to litigate this

matter.[15] (ECF No. 78-3; *see also* Pl.'s Post-Trial Mem. at 6.) Plaintiff is entitled to

recover for costs incurred in the litigation. Fed. R. Civ. P. 54(d)(1). However,

recoverable costs are not limitless and pertain to "court fees, court-reporter fees and

transcripts 'necessarily obtained for use in the case,' fees for printing and witnesses, fees

for exemplification and copying 'necessarily obtained for use' in the case, docket fees,

and fees for court-appointed experts." *Burke*, 315 F. Supp. 3d at 915 (quoting 28 U.S.C.

§ 1920). Because the Clerk has indicated that further documentation will be required

from Plaintiff's counsel before an award of costs may be determined, the amount of such

an award will be the subject of a separate Order by this Court.

---

[14] To the extent Plaintiff's attorneys find that a 27 percent reduction is too high given their initial
proposition that the Court reduce attorneys' fees by a little over 7 percent, the Court disagrees.

> The Court commends Plaintiff[] for exercising that billing judgment and trimming
> hours that could have been 'excessive, redundant, or otherwise unnecessary' . . . .
> [b]ut Plaintiff['s] removal of other hours from its fee petition that they felt no
> longer should be included in the exercise of their billing judgment does not
> provide the Court any more detail on otherwise vague descriptions on those hours
> that remain.

*See Scott*, 2020 WL 2771949, at *7 (quoting *Hensley*, 461 U.S. at 434).

[15] Plaintiff's filings are unclear as to the amount requested as the filings allege three different
figures: $9,199.07, $9,246.17, and $9,527.22.

## V.    Conclusion

Based on the foregoing, Plaintiff's Motion for Attorneys' Fees (ECF No. 73) will be granted in part, Defendant's Motion for Application of the Statutory Damages Cap (ECF No. 77) will be granted, and Defendant's Motion for Judgment as a Matter of Law will be denied (ECF No. 75).[16] Accordingly, Plaintiff's jury award on Counts One and Two will be limited to a combined total of $50,000.00, pursuant to § 1981a, although her award on Count Three will remain $25,000.00. Plaintiff is further entitled to front pay in the amount of $83,280.42 and back pay in the amount of $133,017.28, plus pre-judgment interest. Finally, an award of $475,000.00 in attorneys' fees is appropriate to compensate Plaintiff's counsel. The sum of Plaintiff's awards will be subject to statutory post-judgment interest pursuant to 28 U.S.C. § 1961.

An appropriate Order will accompany this Memorandum Opinion.

                                            /s/
                                    _____
                                    Henry E. Hudson
                                    Senior United States District Judge

Date: July 16, 2020
Richmond, Virginia

---

[16] Defendant filed a Motion for Judgment as a Matter of Law on March 5, 2020. This Memorandum Opinion resolves all other outstanding issues before this Court. Therefore, the Court will enter judgment pursuant to Federal Rule of Civil Procedure 58 following entry of this Memorandum Opinion. Accordingly, as the Court indicated at the post-trial evidentiary hearing, Defendant's Motion for Judgment as a Matter of Law will be denied. Fed. R. Civ. P. 58(a)(1) ("Every judgment and amended judgment must be set out in a separate document, but a separate document is not required for an order disposing of a motion . . . for judgment under Rule 50(b)."). However, even if the Court addressed Defendant's Motion for Judgment as a Matter of Law at length, it believes this determination is supported by the parties' evidence. Canvassing the trial record and considering the parties' post-trial arguments, this Court can find no basis for disturbing the jury's considered verdict in this case.